UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Raymond L. Semler,

                 Petitioner,

    vs.                          REPORT AND RECOMMENDATION

Cal Ludeman, Commissioner
of the Department of Human
Services, and Dennis Benson,
CEO of the Minnesota Sex
Offender Program,

                 Respondents.      Civ. No. 09-3648 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Respondents' Motion to Dismiss the Petitioner's Petition for a Writ of Habeas Corpus, which he has filed pursuant to Title 28 U.S.C. §2254. The Petitioner appears <u>pro se</u>, and the Respondents appear by Ricardo Figueroa, Assistant Minnesota Attorney General. For reasons which follow, we recommend that the Habeas Corpus Petition be dismissed.

## II.  Factual and Procedural Background

The Petitioner commenced this action on December 21, 2009, by filing a Habeas Corpus Petition challenging a State Court Judgment entered on January 2, 2001, in the Minnesota District Court for Crow Wing County.  See, Petition, Docket No. 1, at p. 1¶¶1-4.  The Petitioner is no longer in custody pursuant to that Judgment, as he was released from custody on December 31, 2001.  Id. at p. 8 of 14.  However, he is currently in State custody as a patient in the Minnesota Sex Offender Program ("MSOP"), in Moose Lake, Minnesota, after being civilly committed as a Sexually Dangerous Person ("SDP"), for an indeterminate term, pursuant to Minnesota Statutes Section 253B.185.  See, In re the Matter of the Civil Commitment of Raymond Leon Semler ("In re Semler"), 2007 WL 969081 (Minn.App., April 3, 2007), rev. denied (Minn. May 30, 2007).

The Petitioner argues that, in revoking his probation, his Procedural and Substantive Due Process rights were violated; that there was insufficient evidence to support his probation revocation; that he was coerced into entering a guilty plea, and as a result, that he was denied the effective assistance of counsel under the Sixth

Amendment; and that the District Court failed to comply with the requirements of State v. Austin, 295 N.W.2d 246, 250 (Minn. 1980). See, Petition, supra at pp. 8-12.[1]

On December 28, 2009, the Respondents filed a Motion to Dismiss, in which they argue that the Petition is time-barred.[2] See, Docket No. 6. Alternatively, the Respondents argue that we are without jurisdiction because the Petitioner is no longer in custody pursuant to the challenged Judgment, and as a consequence, that there is no live case or controversy. For his part, the Petitioner argues that his Petition is not time-barred, and that there is a live case or controversy, because the civil commitment, for which he is currently in custody, was as a consequence of his probation revocation.

By way of background, in March of 1997, the Petitioner was found guilty of fourth-degree criminal sexual conduct, and kidnapping. See, State v. Semler, 2008 WL 73235 at *1 (Minn.App., January 8, 2008)(Semler I). The District Court

---

[1]Pursuant to State v. Austin, 295 N.W.2d 246, 250 (Minn. 1980), a Minnesota District Court must make the following findings, before it can revoke probation: "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation."

[2]In our initial review of his submissions, we found it likely that we could not entertain the Petitioner's claims on their merits, because it appeared that they were time-barred, and because it appeared that he was no longer in custody pursuant to the probation revocation of 2001. Accordingly, by Order dated December 28, 2009, we permitted the Respondents to file a Motion to Dismiss, in lieu of a complete Answer on the merits of the Petition. See, Docket No. 4.

sentenced the Petitioner to 42 months in prison, but stayed the execution of that sentence, and imposed 50 years of supervised probation, which required him to complete an outpatient sex-offender treatment program, and to abstain from the use of alcohol.  Id.

In July of 2000, the Petitioner was charged with two (2) Counts of gross misdemeanor driving while impaired ("DWI").  See, Semler v. State, 2009 WL 749562 at *1(Minn.App., March 24, 2009), rev. denied (Minn. May 19, 2009)(Semler II).  Shortly thereafter, in August of 2000, the Petitioner's Probation Officer also sought to revoke his probation on the ground that the Petitioner had used alcohol, and had failed to complete sex offender treatment, in violation of the terms of his probation.  Id.

At a Hearing in January of 2001, the Petitioner admitted that he had violated his probation by using alcohol, and by failing to complete sex offender treatment.  Id. After giving the Petitioner the opportunity to explain, the District Court then revoked the Petitioner's probation, and executed his sentences on his 1997 convictions for kidnapping, and criminal sexual conduct.  See, Semler I, supra at *1.  The Petitioner then pled guilty to one (1) Count of gross misdemeanor DWI, and the District Court sentenced him to one (1) year in jail, which was to be served concurrently with the

executed sentences for the 1997 convictions. Id. As a consequence, on January 5, 2001, the Petitioner was remanded to the custody of the Minnesota Department of Corrections ("DOC"). See, Petition at p. 2¶5. The Petitioner did not file a direct appeal as to either the probation revocation, or the DWI conviction. Id. at p. 2¶8.

As previously noted, at some point after the Petitioner's probation was revoked, the Petitioner was civilly committed as an SDP. See, In Re Semler, supra. The Petitioner appealed his commitment, which was affirmed by the Minnesota Court of Appeals on April 3, 2007, and the Minnesota Supreme Court denied review of his commitment on May 30, 2007. Id. The Petitioner remains in custody pursuant to that civil commitment.

In August of 2006, the Petitioner moved to withdraw his guilty plea, in the Minnesota District Court for Crow Wing County, for the gross misdemeanor DWI. See, Semler I, supra at *1; Petition, supra at pp. 2-3¶8. The District Court concluded that the Petitioner's Motion was untimely, since he had filed it five (5) years after his sentence had been imposed, and after the sentence had been completely served. Semler I, at *2. In addition, the District Court found that the Petitioner had failed to show manifest injustice that resulted from the guilty plea. Id.

On appeal from that decision, the Court of Appeals concluded that the District Court had not abused its discretion in considering the untimeliness of the Petitioner's Motion, and it further concluded that, in any event, the Petitioner had failed to establish manifest injustice, as a result of his guilty plea. Id. As a consequence, the Court of Appeals affirmed the District Court's denial of the Petitioner's Motion to withdraw his guilty plea on the DWI conviction.

On appeal, the Petitioner also argued that the District Court had abused its discretion by failing to make the requisite Austin findings before revoking his probation in 2001. Id. at *2.[3] In pertinent part, the Court of Appeals explained as follows:

> At the January 2001 hearing, appellant admitted that he violated his probation by using alcohol and by failing to complete an outpatient sex-offender treatment program. The district court confirmed with counsel that a factual basis existed to support appellant's admission. But the court did not inquire into the nature of the violations, did not find whether the violations were inexcusable or intentional, and did not weigh the need for confinement against appellant's interest in freedom. Instead, the court

---

[3]It appears that the Petitioner did not raise this argument at the District Court level, since the Court of Appeals acknowledged that the Petitioner's Austin argument was not properly before the Court. See, Semler I at *2. However, the Court exercised its discretion to address that issue in the interests of justice. Id.

simply found that appellant violated his probation and then imposed sentence.

"Courts must seek to convey their substantive reasons for revocation and the evidence relied upon."  Because the district court did not address the required <u>Austin</u> findings or engage in any similar analysis regarding its decision to revoke probation, we conclude that the court abused its discretion.  We acknowledge that appellant has completed his sentence.  Nevertheless, the supreme court has made it clear that the Austin findings must be made expressly by the district court, and that if one or more findings is omitted, remand is the remedy consistent with the law.  Thus, we reverse the district court's order revoking appellant's probation and remand for the purpose of satisfying the requirements of Austin.

<u>Id.</u> at *3 [citations omitted].

Following remand, on March 6, 2008, the District Court issued an Order, which contained findings of fact, and conclusions of law.  See, <u>Semler II</u>, supra at *1.  The Petitioner appealed from that Order "arguing that the district court erred * * * by issuing findings without holding a hearing, considering the nature of his original crime, and failing to consider the third Austin factor."  <u>Id.</u>  The Court of Appeals found that the District Court had properly considered the relevant evidence, and the <u>Austin</u> factors, and that it had not abused its discretion in failing to hold a Hearing, and accordingly, it affirmed the District Court's Order.  <u>Id.</u> at *2-3.  The Minnesota

Supreme Court denied review on May 19, 2009. Then, on December 21, 2009, the Petitioner filed his present Habeas Petition with this Court.

With the following factual and procedural backdrop as our context, we turn to a consideration of the parties' arguments.

### III. Discussion

A.    Statute of Limitations.

1.    Standard of Review. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), effected several significant changes in the Federal Habeas Corpus statutes. One of those changes was incorporated into Title 28 U.S.C. §2244(d), which establishes a one (1) year statute of limitations for Habeas Corpus Petitions, which are filed by State prisoners who seek Federal Court review of a State Court conviction, or sentence. The Statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. The limitation period shall run from the latest of --
>
> > (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Title 28 U.S.C. §2244(d).

As a consequence, a State prisoner, who seeks a Federal Habeas Corpus review of his State conviction or sentence, ordinarily must file his Petition within one (1) year after his Judgment of conviction "became final by the conclusion of direct review."  Title 28 U.S.C. §2244(d)(1)(A).

The Statute plainly provides, however, that the deadline can be modified if:  1) the prisoner is unable to file his Federal Habeas Corpus Petition in a timely manner because of an impediment that was imposed by the State; 2) the prisoner is relying on

some newly recognized constitutional right that is retroactively applicable on collateral review; or 3) the prisoner is relying on some new evidence which could not have been reasonably discovered in time to file a timely Petition.  See, Title 28 U.S.C. §2244(d)(1)(B)-(D).

The statute of limitations also includes a tolling provision, which stops the running of the one (1) year limitations period while the prisoner is pursuing a "properly filed" application for post-conviction relief in the State Courts.  See, Title 28 U.S.C. §2244(d)(2).  Our Court of Appeals has expressly held, however, that the period between the completion of the direct appeal process, and the application for post-conviction relief, is counted towards the one (1) year limitations period.  See, Maghee v. Ault, 410 F.3d 473, 475 (8th Cir. 2005); Curtiss v. Mount Pleasant Correctional Facility, 338 F.3d 851, 853-55 (8th Cir. 2003), cert. denied, 540 U.S. 1060 (2003); Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001).

2.    Legal Analysis.    The Respondents argue that the Petition should be dismissed because the Petitioner did not file his present Petition until well after the statute of limitations had expired.  For his part, we understand the Petitioner to argue that the Judgment on his probation revocation did not become final until the date on

which the latest round of appeals concluded -- that is, on May 19, 2009 -- following the Court of Appeal's Order reversing the probation revocation.

As a threshold matter, we must address the nature of the Petitioner's Habeas claim.  The Petitioner asserts that he is challenging his plea of guilty to the probation revocation.  However, it is clear that the plea of guilty, and the probation revocation, are distinct from each other.  Rather, as we have detailed, in 2001, the District Court revoked the Petitioner's probation on the 1997 convictions for violations of the terms of his probation, **and, in addition,** the Petitioner pleaded guilty to one (1) Count of DWI.  Accordingly, while the Petitioner conflates his guilty plea, and the probation revocation, we will construe his Petition as asserting both a challenge to the DWI conviction, which was based upon his plea of guilty, and the probation revocation, which was based upon violations of the terms of his probation.

Because they involve different issues, we will address the applicability of the statute of limitations to the DWI conviction, and the probation revocation, separately.

a)      The DWI Conviction.  We are mindful that, in attempting to overcome the statute of limitations, the Petitioner argues that his claim is not time-barred because the State created an impediment which prevented the Petitioner from seeking Federal Habeas relief within the prescribed one (1) year limitation period, that

the Petitioner's claims are based upon a newly-recognized, and retroactively applicable, constitutional right, and that it is based upon new evidence that could not have been discovered in time to file a timely Petition. See, Petitioner's Response, Docket No. 9, at p. 4 of 15. We need only address those arguments briefly, however, since, aside from those bare assertions, the Petitioner has failed to provide any basis, or explanation, for those arguments. Accordingly, we can only speculate as to the basis for the arguments,[4] and our review of the Petitioner's submissions has failed to reveal the nature of the Petitioner's arguments, in this respect.

--------------------

[4]We recognize that the Petitioner has cited a litany of cases, in which the Courts have addressed equitable tolling of the statute of limitations in AEDPA cases. See, e.g., Laws v. Lamarque, 351 F.3d 919 (9th Cir. 2003)(remanding to develop the record on whether equitable tolling was appropriate, since the petitioner had alleged, in a verified pleading, that he was mentally incompetent, and therefore, unable to file a timely petition); Herbst v. Cook, 260 F.3d 1039, 1043 n. 4 (9th Cir. 2001)(alleging that the statute of limitations was tolled because the petitioner did not have access to legal materials describing or setting forth the provisions of the AEDPA); Miles v. Punty, 187 F.3d 1104, 1107 (9th Cir. 1999)(concluding that, where external forces, rather than the petitioner's lack of diligence, account for the failure to file a timely petition, equitable tolling may be appropriate); Harris v. Carter, 515 F.3d 1051, 1055-1056 (9th Cir. 2008)(holding that equitable tolling was justified based upon the petitioner's reliance on Ninth Circuit precedent in delaying to file his petition, where that precedent was subsequently overruled, rendering his petition untimely), cert. denied, --- U.S. ---, 129 S.Ct. 397 (2008)[cited in Petitioner's Response, Docket No. 9 at pp. 3-4]. Aside from those vague references, the Petitioner has failed to explain how, or even if, those circumstances would apply to his Petition, and therefore, those citations provide no meaningful assistance in our evaluation of the Petitioner's potential arguments.

Simply put, the Petitioner has failed to provide any explanation, or support, for those bare assertions and, as such, they may be easily and properly rejected, since there is no showing that the State created any impediment which prevented the Petitioner from seeking Federal Habeas relief within the prescribed one (1) year limitation period, nor is there any evidence that the Petitioner's claims are based upon any newly-recognized, and retroactively applicable, constitutional right, or upon any new evidence that could not have been discovered in time to file a timely Petition. Thus, the one (1) year statute of limitations began to run, under the circumstances presented here, in accordance with Section 2244(d)(1)(A), when the Petitioner's Judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review."

As we have noted, the Petitioner is challenging a Judgment that was entered on January 2, 2001. See, <u>Petition</u>, supra at p. 2¶5. Since the Petitioner did not pursue a direct appeal as to the DWI conviction, that Judgment became final, for purposes of the statute of limitations, upon "the expiration of the time for seeking such review." <u>Title 28 U.S.C. §2244(d)(1)(A)</u>. According to Rule 28.02, Subdivision 4(3), Minnesota Rules of Criminal Procedure, "[i]n felony and gross misdemeanor cases, an appeal by the defendant must be filed within 90 days after final judgment or entry

of the order being appealed."  As a result, the deadline for seeking direct appellate review of the Petitioner's DWI conviction, and sentence, was ninety (90) days after the entry of Judgment -- that is, on April 2, 2001 -- which is the date on which the Judgment on the DWI conviction became final, and resultantly, that was the date on which the one (1) year statute of limitations began to run for Habeas review.  The Petitioner did not file his present Petition until December 21, 2009, which was more than eight (8) years after the one (1) year statute of limitations began to run. Therefore, his challenge to the DWI conviction is plainly time-barred, unless the statute was tolled.

As we have detailed, the Habeas Corpus statute of limitations is tolled, pursuant to Section 2244(d)(2), when a prisoner properly commences a post-conviction action in a State Court.  The statute remains tolled during the entire period of time, during which the post-conviction proceedings pend before the State Court, including the State Appellate Courts.   See, <u>Bishop v. Dormire</u>, 526 F.3d 382, 383 (8th Cir. 2008); <u>Williams v. Bruton</u>, 299 F.3d 981, 983 (8th Cir. 2002); <u>Mills v. Norris</u>, 187 F.3d 881, 883-84 (8th Cir. 1999).  As noted, the Petitioner filed a Post-Conviction Motion in Minnesota State Court, in February of 2006.[5]  See, <u>Petitioner's Response</u>, supra at p.4

_____

[5]It is unclear on what date that Motion was filed but, for present purposes, that date is unimportant, since the Petitioner's Habeas Petition is clearly time-barred

of 15.  As a consequence, the Motion for Post-Conviction relief was filed more than four (4) years after the Judgment was entered.[6]  By that time, however, the one (1) year statute of limitations for seeking Federal Habeas Corpus relief had already expired.

Since the statute of limitations for any Federal Habeas review had already expired before the Petitioner filed his Post-Conviction Motion in State Court, that Motion did not toll the one (1) year statute of limitations.  See, <u>Jackson v. Ault</u>, 452 F.3d 734, 735-736 (8th Cir. 2006)("The one year AEDPA limit for federal habeas filing cannot be tolled after it has expired."), cert. denied, 549 U.S. 1123 (2007), citing <u>Curtiss v. Mount Pleasant Correctional Facility</u>, supra at 853; see also, <u>Webster v. Moore</u>, 199 F.3d 1256, 1259 (11th Cir. 2000)(holding that a State Post-Conviction Motion, which is filed after the Section 2244(d)(1) statute of limitations has expired, cannot toll the statute "because there is no period remaining to be tolled"), cert. denied, 531 U.S. 991 (2000); <u>Cuypers v. Symmes</u>, 2007 WL 1219306 at *3 (D. Minn., April 24, 2007)("[I]f a petitioner fails to initiate state court proceedings until after the

---

regardless of the exact date on which that Motion was filed.

[6]Under Minnesota law, Post-Conviction Motions must be filed within two (2) years after "the entry of judgment of conviction or sentence if no direct appeal is filed."  <u>Minnesota Statutes Section 590.01, Subdivision 4(a)(1)</u>.

one-year statute of limitations expires, then subsequent state post-conviction proceedings will not toll the statute of limitations because there is no federal limitations period remaining to toll."), citing Painter v. Iowa, supra at 1256. Consequently, the tolling provision is irrelevant here, because the Federal statute of limitations expired before the Petitioner filed his Post-Conviction Motion on his DWI conviction in State Court.[7]

In sum, because the Petitioner's claims that relate to his DWI conviction are time-barred, we recommend that those claims be dismissed with prejudice.

---

[7]The Petitioner may mistakenly believe that his Post-Conviction Motion did not merely toll the running of the statute, but somehow "reset the clock," by giving him a fresh one (1) year limitations period in which to seek Federal Habeas review. However, that is simply not the case. "Section 2244(d)(2) only stops, but does not reset, the [AEDPA] clock from ticking and cannot revive a time period that has already expired." Cordle v. Guarino, 428 F.3d 46, 48 n. 4 (1st Cir. 2005)[citations omitted]; see also, Finch v. Miller, 491 F.3d 424, 426 (8th Cir. 2007)("To extend the limitations period, the state post-conviction application must be properly filed."), citing Pace v. DiGuglielmo, 544 U.S. 408, 417 (2005), for the proposition that, "[i]f the state court rejected petitioner's post-conviction application 'as untimely, it was not "properly filed," and he is not entitled to statutory tolling under §2244(d)(2).'"

Here, the Petitioner's Post-Conviction Motion to withdraw his guilty plea was rejected, in part, as untimely, as we have already detailed. While the Court of Appeals reversed the Petitioner's probation revocation, it affirmed his DWI conviction, and the relief that the Petitioner received in relation to his probation revocation had no impact on the finality of his DWI conviction. As such, since the Petitioner filed his Motion for post-conviction relief well after the statute of limitations had expired, that Motion had no impact on the running of the clock as to that limitations period.

b)      The Probation Revocation.   As noted, the statute of limitations begins to run, pursuant to Section 2244(d)(1)(A), when a petitioner's Judgment of conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review."

The Respondents claim that, because the statute of limitations had already expired when the Petitioner filed his Motion for post-conviction relief in 2006, his claims, as they pertain to the probation revocation, are clearly time-barred.  We disagree, because the Respondents have failed to account for the fact that the Minnesota Court of Appeals reversed the Order of the District Court, which had revoked the Petitioner's probation in 2001.  See, Semler I, supra at *3; Semler II, supra at *2 ("In reversing the district court's order revoking Semler's probation, we stated that remand was necessary for the purposes of satisfying the requirements of Austin.")[quotations and citation omitted].

We would readily agree with the Respondents' argument, if the Minnesota Court of Appeals had not reversed the Petitioner's probation revocation.  However, that is not the case, and we cannot discount the potentiality that the Court's determination, in that respect, impacted upon the finality of the 2001 probation revocation.  If, by virtue of that reversal, the original probation revocation can no

longer be considered final, then the probation revocation would not have become final until May 19, 2009, at the earliest. As a consequence, at least as based upon the arguments, and Record presently before us, we cannot say that the Petitioner's challenge to his probation revocation is clearly time-barred. Accordingly, we are unable to recommend that the Petitioner's probation revocation claim be dismissed on statute of limitations grounds.

  B. <u>Subject Matter Jurisdiction</u>.

    1. <u>Standard of Review</u>. Article III of the Constitution allows Federal Courts to adjudicate only actual, ongoing cases or controversies. See, <u>Americans United for Separation of Church and State v. Prison Fellowship Ministries</u>, 509 F.3d 406, 420-21 (8th Cir. 2007), citing <u>Haden v. Pelofsky</u>, 212 F.3d 466, 469 (8th Cir. 2000); <u>Potter v. Norwest Mortgage, Inc.</u>, 329 F.3d 608, 611 (8th Cir. 2003). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate" and, "[w]hen an action no longer satisfies the case or controversy requirement, the action is moot and a federal court must dismiss the action." <u>Potter v. Norwest Mortgage, Inc.</u>, supra at 611 [citations and internal quotations omitted].

The ongoing case-or-controversy requirement is no longer met if an event occurs, during the course of the proceedings, which precludes the Court from granting any meaningful relief to the party who initiated the action. See, In re Security Life Insurance Co. of America, 228 F.3d 865, 870 (8th Cir. 2000), citing In re Grand Jury Subpoenas Duces Tecum, 78 F.3d 1307, 1310 (8th Cir. 1996), cert. denied, 519 U.S. 980 (1996). If it becomes impossible for the Court to provide any further redress for the claims that have been raised, then the case must be dismissed as moot. See, Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990); Potter v. Norwest Mortgage, Inc., supra at 611. In addition, as a general rule, when a Habeas petitioner protests the conditions of his confinement, his claim is mooted when those conditions no longer exist. See, Miller v. Whitehead, 527 F.3d 752, 756 (8th Cir. 2008), citing Calderon v. Moore, 518 U.S. 149, 150 (1996); Thompson v. Smith, 719 F.2d 938, 940-41 (8th Cir. 1983)(Habeas claims were mooted by the petitioner's transfer to another institution); Willis v. Ciccone, 506 F.2d 1011, 1019 (8th Cir. 1974).

The claims of a Habeas petitioner cannot be moot as long as that petitioner remains incarcerated because, in such cases, a Writ of Habeas Corpus can always provide meaningful relief -- namely, release from prison. See, Spencer v. Kemna, 523 U.S. 1, 7 (1998)("Spencer III"). Once a Habeas petitioner is released from custody,

however, his case becomes moot, unless he can show that a Writ of Habeas Corpus would still provide him some genuine benefit.  Id.

If a Habeas petitioner is challenging a criminal conviction, then a Writ of Habeas Corpus can still benefit him, even after he has been released from custody, by eliminating some of the "collateral consequences that attached to the conviction as a matter of law."  Id. at 9, citing Carafas v. LaVallee, 391 U.S. 234, 237 (1968).  Such "collateral consequences" might include restrictions on the right to vote, the right to own a gun, the right to serve on a Jury, or the right to engage in certain types of businesses or professions.  However, a Habeas petitioner cannot rely on the collateral consequences of a wrongful criminal conviction, so as to save his case from mootness, if he is not actually challenging the validity of his conviction.

In Spencer III, the Supreme Court considered whether a Writ of Habeas Corpus could still provide any meaningful post-release benefit to a prisoner who was not challenging his criminal conviction.  There, the petitioner was not attacking his original criminal conviction, but rather, he claimed only that he had been wrongfully returned to prison, pursuant to an erroneous revocation of his parole.  By the time the matter came before the Federal District Court, however, the petitioner had already been released from prison.  The District Court concluded that the Petition would have

to be summarily dismissed, without reaching the merits of the petitioner's challenge to his Parole Revocation proceedings, because the petitioner was no longer "in custody." Our Court of Appeals affirmed the dismissal order, see, Spencer v. Kemna, 91 F.3d 1114 (8th Cir. 1996)("Spencer II"), and the case proceeded to the United States Supreme Court.

The Supreme Court initially observed that the District Court had erred by dismissing the case pursuant to the "in custody" requirement, which is prescribed by the Federal Habeas Statutes. The Court noted that the petitioner "was incarcerated by reason of the parole revocation at the time the petition was filed, which is all the 'in custody' provision of 28 U.S.C. §2254 requires." Spencer III, supra at 7. The Court then addressed "[t]he more substantial question" of "whether [the] petitioner's subsequent release caused the petition to be moot because it no longer presented a case or controversy under Article III, §2, of the Constitution." Id.

To resolve the case-or-controversy issue, the Supreme Court considered whether the petitioner's Parole Revocation Order would continue to have any type of collateral consequences, following his release from prison. The Court concluded that there were no collateral consequences, which resulted from the petitioner's Parole Revocation Order. Once the petitioner reached the end of his Parole Revocation

confinement, and was wholly released from State custody, he could no longer gain any meaningful benefit from a Writ of Habeas Corpus. Therefore, the Court held that the Habeas action had become moot.

B.     Legal Analysis. The Respondents argue that, because we could provide no meaningful relief to the Petitioner, there is no ongoing case or controversy, and accordingly, that we are without jurisdiction. We agree.[8]

Of course, a Writ of Habeas Corpus can generally provide meaningful relief when the petitioner remains in custody, but the application of that general principle requires that the petitioner be "in custody" pursuant to the conviction or sentence that is being challenged in the Habeas petition. See, Maleng v. Cook, 490 U.S. 488, 490-491 (1989)(Section 2254(a) requires "that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed."), citing Carafas v. LaVallee, supra at 238; Spencer III, supra at 7 (recognizing that the "in custody" requirement was satisfied where the petitioner was in custody at the time of filing, pursuant to the parole revocation that he challenged). Here, the Petitioner is not in custody as a result of his probation revocation, and as a consequence, the fact that

_____

[8]Since we have already determined that the Petitioner's claim, as it relates to the DWI conviction, is time-barred, we need not address whether there is an ongoing case or controversy as to that conviction. Accordingly, we have confined our analysis to the Petitioner's challenge to his probation revocation.

the Petitioner is currently in custody does not, by itself, satisfy the jurisdictional requirement that there be an ongoing case or controversy. For his part, the Petitioner argues that because he is challenging a wrongful conviction, collateral consequences are presumed, thereby establishing an ongoing case or controversy. However, this is simply not the case under the circumstances presented here.

"In habeas corpus cases, the Supreme Court has been willing to presume, notwithstanding the intervening satisfaction of a sentence, that a wrongful conviction carries with it collateral consequences sufficient to create an Article III case or controversy." Beachem v. Schriro, 141 F.3d 1292, 1293 (8th Cir. 1998), cert. denied, 525 U.S. 938 (1998), citing Sibron v. New York, 392 U.S. 40, 55-56 (1968), and Carafas v. LaVallee, supra at 237; Leonard v. Nix, 55 F.3d 370, 372-373 (8th Cir. 1995). As previously noted, collateral consequences might include restrictions on the right to vote, the right to own a gun, the right to serve on a Jury, or the right to engage in certain types of businesses or professions.

Contrary to the Petitioner's representations, however, the Petitioner is not challenging the conviction that led to his probation but, rather, he is challenging the revocation of his probation -- that is to say, he is not challenging a wrongful **conviction.** In Spencer III, the Supreme Court distinguished a challenge to a criminal

conviction, and a challenge to a parole revocation. The Supreme concluded that, consistent with the principles announced in <u>Lane v. Williams</u>, 455 U.S. 624 (1982), collateral consequences would not be presumed in order to satisfy the case or controversy requirement, but rather, the petitioner would be required to demonstrate that such collateral consequences actually existed. <u>Spencer III</u>, supra at 14, citing <u>Lane v. Williams</u>, supra (finding no injury for convicted felons challenging parole violations, because the consequences to be imposed were based upon discretionary decisions, wherein a sentencing Judge or employer would not be prevented from taking into account the underlying conduct that formed the basis for the parole violation); <u>Strother v. Nardolillo</u>, 583 F. Supp.2d 645, 648-649 (E.D. Pa. 2008) ("Where a petitioner challenges the revocation of parole, however, collateral consequences are not presumed and must instead be demonstrated by the petitioner."), citing <u>Spencer III</u>, and <u>Lane v. Williams</u>, supra; <u>United States v. Kissinger</u>, 309 F.3d 179, 181 (3rd Cir. 2002)(concluding that there was no distinction between parole and probation, and accordingly, the appellant could not avoid the application of <u>Spencer III</u>). The circumstances presented here are controlled by the holding in <u>Spencer III</u>,

and accordingly, collateral consequences will not be presumed but, instead, the Petitioner is required to demonstrate the actual presence of collateral consequences.[9]

In attempting to satisfy the requirement that he establish collateral consequences, the Petitioner asserts that his civil commitment is a collateral consequence of his probation revocation, because "it would have been highly unlikely that he would have been indefinitely civilly committed" but for the probation revocation. See, Petitioner's Response at p. 8 of 15.[10]  We disagree.

Notably, in Lane v. Williams, supra, the Supreme Court advised as follows:

> The doctrine of [collateral consequences] is not applicable in this case.  No civil disabilities such as those in Carafas

---

[9]Of course, the Petitioner was convicted of DWI, but he cannot rely on that conviction for collateral consequences, because his claims on that conviction are time-barred, and because that conviction was separate and distinct from the probation revocation, which was not directly premised upon his DWI conviction.

[10]We note that, in this respect, it is a bit unclear what the Petitioner means, because it appears quite likely that the probation revocation, which the Petitioner is currently challenging, did not actually precipitate the review that resulted in the civil commitment proceeding; rather, he was reclassified as high risk offender, and ultimately civilly committed, after a subsequent conditional release violation.  See, Semler v. Klang, Civ No. 08-919 (JNE/RLE), Report and Recommendation, Docket No. 38 , at pp. 4-7 of 37(February 9, 2009), adopted by Docket No. 40 (March 3, 2009).  Indeed, the Petitioner, himself, acknowledges that he was released from custody on December 31, 2001, and it appears that his civil commitment proceeding was not initiated until several years later.  In any event, even if the commitment had occurred during his confinement on the probation revocation, we would still conclude that his current Habeas challenge to the probation revocation is moot.

[v. LaVallee, 391 U.S. 234 (1968)] result from a finding that an individual has violated parole.  At most, **certain non-statutory consequences may occur**; employment prospects, or the sentence imposed in a future criminal proceeding, could be affected. * * * The discretionary decisions that are made by an employer or a sentencing judge, however, **are not governed by the mere presence or absence of a recorded violation of parole**; these decisions may take into consideration, and are more directly influenced by, the underlying conduct that formed the basis for the parole violation.  Any disabilities that flow from whatever respondents did to evoke revocation of parole are not removed -- or even affected -- by a District Court order that simply recites that their parole terms are "void."

Lane v. Williams, supra at 632-633 [emphasis added].

Similarly, the Petitioner's civil commitment was not governed by the mere presence or absence of the probation revocation, and the fact that the Court may, in its discretion, consider the circumstances of the revocation cannot, by itself, establish that it is a collateral consequence, consistent with Lane.

The Petitioner has failed to demonstrate that there are any other direct statutory consequences that result from probation revocation, and we have found no indication that State law would provide for any direct statutory consequences, such as the loss of the possibility of probation in future proceedings, or the loss of civil rights, which are clearly tied to a conviction rather than probation.  See generally, Minnesota

Statutes Chapter 609; Minnesota Statutes Sections 609.14 and 609.165; Minnesota Constitution Article 7, Section 1.

We are mindful that the Petitioner appears to assert that, because he was sent to the DOC as a result of his probation revocation, he was subject to civil commitment proceedings. See, Petitioner's Response, supra at p. 8 of 15. Stated otherwise, the Petitioner appears to argue that, had he never been committed to the custody of the DOC, the State would never have commenced commitment proceedings against him. The Petitioner argues, as a result, that the invalidation of his civil commitment would affect his civil commitment -- presumably, because the entire commitment proceeding would be invalidated. We find that argument to be unavailing.

We cannot discount the fact that the Petitioner may not have been subject to civil commitment proceedings, as a practical matter, if he had not, at some point, been placed in DOC custody. Notably, however, it is not essential that the Petitioner be in the custody of the DOC, at the time that commitment proceedings are commenced. See, Minnesota Statutes Section 253B.07, Subdivision 2 ("Any interested person * * * may file a petition for commitment in the district court of the county of the proposed patient's residence or presence"); Minnesota Statutes Section 253B.185, Subdivision 1 ("The petition [alleging that someone is a sexually dangerous person]

is to be executed by a person having knowledge of the facts and filed with the committing court of the county in which the patient has a settlement or is present," and "**[i]f the patient** is in the custody of the commissioner of corrections, the petition may be filed in the county where the conviction for which the person is incarcerated was entered.")[emphasis supplied].

As a consequence, we find no basis upon which to conclude that the invalidation of the probation revocation would have any effect on the legality of the Petitioner's civil commitment. Whatever precipitated the actual commitment proceedings, so long as his commitment was not **necessarily predicated** on an unlawful conviction -- or in this case, an unlawful probation revocation -- we would be unable to reach the legality of the civil commitment. Accordingly, we cannot conclude that the Petitioner's civil commitment was a collateral consequence of the Petitioner's probation revocation. Having established no other collateral consequences, we find that the Petitioner's Petition does not present a live controversy, by virtue of the absence of any collateral consequences of his probation revocation.

We note that, in so concluding, we adhere to the Supreme Court's observation, that the practice of presuming collateral consequences diverges from the "long-settled

principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" Spencer III, supra at 10-11. In Spencer III, the Supreme Court further advised that, while the presumption is likely to match reality in the context of criminal convictions, the same could not be said for parole revocations. Id. at 12. We conclude that the logic and reasoning of Spencer III, which 'counsels a cautious approach to the presumption of collateral consequences," Beachem v. Schriro, supra at 1294, should be applied to the Petitioner, who has shown no collateral consequences, that result from his probation revocation.

Next, the Petitioner implies that his case falls within an exception to the general rule that requires an ongoing controversy, because the case is "capable of repetition, yet evading review." See, Petitioner's Response, supra at p. 5 of 15. However, a similar argument was rejected in Spencer III, supra at 17-18:

> [P]etitioner argues in his reply brief that this case falls within the exception to the mootness doctrine for cases that are "capable of repetition, yet evading review." * * * "The capable-of-repetition doctrine applies only in exceptional situations," Los Angelos v. Lyons, [461 U.S. 95, 109 (1983)], "where the following two circumstances are simultaneously present: "'(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration and (2) there is a reasonable expectation that the same complaining party will be subject to the same action

again."''" [Lewis v. Continental Bank Corp., 494 U.S. 472, 481(1990)](quoting Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982)(per curiam), in turn quoting Weinstein v. Bradford, 432 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975)(per curiam)); see also Norman v. Reed, 502 U.S. 279, 288, 112 S.Ct. 698, 704-705, 116 L.Ed.2d 711 (1992). Petitioner's case satisfies neither of these conditions. He has not shown (and we doubt that he could) that the time between parole revocation and expiration of sentence is always so short as to evade review. Nor has he demonstrated a reasonable likelihood that he will once again be paroled and have that parole revoked.

The Petitioner has failed to explain why a sentence following a probation revocation is necessarily so short as to always preclude review, and we think it quite clear that the Petitioner has not, and will not be able to, demonstrate that he is reasonably likely to be subject to the same circumstances again. Accordingly, we find the capable of repetition, yet evading review exception to be inapplicable, under the circumstances presented here.

Next, the Petitioner argues that the present case is controlled by the holding in Brock v. Weston, 31 F.3d 887, 890 (9th Cir. 1994). In Brock, the Court of Appeals for the Ninth Circuit reversed a District Court ruling, which found that the petitioner was not "in custody" because he was no longer incarcerated pursuant to the challenged conviction. Although he was not in custody pursuant to the conviction that he appeared to be challenging, the Ninth Circuit construed the petition as a challenge to

his current civil commitment, "as predicated upon his prior expired conviction." <u>Id.</u> at 888.

In <u>Brock</u>, the petitioner challenged a 1974 assault conviction, for which his sentence expired in 1984. In 1991, he was civilly committed under State law as a "sexually violent predator." Subsequently, he filed a Habeas petition challenging his 1974 conviction which, he alleged, the State had relied upon in the civil commitment proceedings.[11] The Ninth Circuit concluded that the circumstances were governed by the holding in <u>Maleng v. Cook</u>, supra at 494, in which the Supreme Court construed a Habeas petition as a challenge to a current sentence, as enhanced by an allegedly invalid expired conviction, such that the "in custody" requirement was satisfied. The Ninth Circuit remanded the case to the District Court, in order to determine if the expired conviction served as a predicate for the civil commitment.

The Petitioner's circumstance is clearly distinguishable from <u>Brock</u> and <u>Maleng</u>. Notably, in <u>Brock</u>, the State statue in question contemplated civil commitment predicated upon a **conviction** for a crime of sexual violence. As such,

---

[11]The Statute under which the petitioner in <u>Brock</u> was committed defined a "sexually violent predator" as someone "who has been convicted of or charged with a crime of sexual violence and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in predatory acts of sexual violence." See, <u>Brock v. Weston</u>, 31 F.3d 887, 888 n.3 (9th Cir. 1994), quoting <u>Wash.Rev.Code §71.09.020(18)</u>.

it was possible for a wrongful conviction to have served as a direct basis for the civil

commitment. See, Wash.Rev.Code §71.09.020(18). In contrast, under Minnesota

law, an SDP is defined, as follows:

> (a) A 'sexually dangerous person' means a person who:
>
> (1) has engaged in a course of harmful conduct as defined in subdivision 7a;
>
> (2) has manifested a sexual personality, or other mental disorder or dysfunction; and
>
> (3) as a result, is likely to engage in acts of harmful sexual conduct as defined in subdivision 7a.

Minn.Stat. §253B.02, Subd. 18c(a).

In turn, harmful sexual conduct is defined as "sexual conduct that creates a substantial

likelihood of serious physical or emotional harm to another." Minnesota Statutes

Section 253B.02, Subdivision 7a(a). Nowhere in the Statute is a prior probation

revocation considered an integral part of, or a predicate to, a civil commitment.

Moreover, it is clear that the civil commitment was not predicated upon the

Petitioner's probation revocation of 2001. See, In re Semler, supra. While the Court

of Appeals briefly mentions the fact that the Petitioner had been incarcerated, on

probation, or on intensive supervised release, since 1996, and that he failed to

complete five (5) sex offender treatment programs, id. at *3, we fail to see how we

could possibly construe the Petitioner's civil commitment as has having been

predicated upon his probation revocation. Simply stated, there is no indication that, even if we were to invalidate the Petitioner's probation revocation, the validity of his subsequent civil commitment could be called into doubt, as a result of being predicated upon an allegedly unlawful proceeding. Cf., <u>Ayers v. Doth</u>, 58 F.Supp.2d 1028, 1033-1035 (D. Minn. 1999)(concluding that the petitioner did not present a live case or controversy when he challenged his commitment as a SDP, but not his commitment as a psychopathic personality, where his commitment under both acts had the same effect, and therefore, his challenge would not affect his confinement).

As noted, the Petitioner also implies that his case is controlled by those decisions in which the Courts have permitted a Habeas petitioner to challenge a **current sentence** as enhanced by an expired conviction. However, we find that those cases are easily distinguished from the Petitioner's circumstance. As pertinent here, in <u>Maleng v. Cook</u>, supra, a Federal prisoner sought Habeas relief alleging that an expired conviction was unlawful, and that it had been unlawfully used to enhance a 1978 conviction. The prisoner had asserted that the conviction under attack was an expired 1958 conviction. Under State law, the expired conviction increased by several years the mandatory minimum term that the petitioner would have to serve as a result of the unexpired sentence. As a consequence, the Court construed the petition as a challenge to the current sentence, **as enhanced by** the expired conviction.

No such construction is permitted by the circumstances presented here, since the Petitioner's probation revocation cannot plausibly be construed as enhancing, or extending, the Petitioner's civil commitment. Indeed, the probation revocation had no discernible role in the civil commitment proceeding. The Petitioner's civil commitment is clearly distinguishable from an "enhanced" sentence, since the Minnesota civil commitment statute does not contemplate anything could reasonably be compared to an "enhancement," simply based upon the existence of the probation revocation, since the existence of the revocation does not extend the length of commitment. See, Minnesota Statutes Sections 253B.01 et seq. As a result, even if the probation revocation was unlawful, the Petitioner is still not entitled to Habeas relief, because it would have no meaningful effect upon his present confinement, since it cannot be construed as a challenge to the length of his current commitment. Accordingly, insofar as the Petitioner relies upon an enhanced sentence argument, we find that reliance misplaced.

In sum, we conclude that there is no longer any "live" case or controversy to be decided, and therefore, we recommend that the Petition, as it pertains to the probation revocation, be dismissed as we are without subject matter jurisdiction to consider that claim further.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Respondents' Motion to Dismiss [Docket No. 6] be granted, and that the Petitioner's Petition for a Writ of Habeas Corpus be dismissed, with prejudice.

Dated:  August 18, 2010                                    *s/Raymond L. Erickson*
                                                          Raymond L. Erickson
                                                          CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 1, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 1, 2010**, unless all interested

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.